IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| JESSE YORK | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. TMD 11-902 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     Defendant. | ) | |

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Jesse York ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C.§§ 401-433.  Before the Court are Plaintiff's Motion for Summary Judgment (Pl.'s Mot. Summ., ECF No. 17), Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 23), and Plaintiff's Response (Pl's Resp., ECF No. 26). No hearing is deemed necessary.  Local Rule 105.6 (D. Md.).  For the reasons presented below, Defendant's Motion for Summary Judgment is GRANTED.

I. Procedural History

Plaintiff protectively filed his application for DIB on March 20, 2008 alleging disability since November 5, 2006 on the basis of back pain and mental problems. R. at 10, 91-92, 114. His claim was denied initially and on reconsideration. R. at 52, 55-57, 53, 61-62. On March 25, 2010, a hearing was held before an administrative law judge ("ALJ"). R. at 20-51. In a decision

dated April 22, 2010, the ALJ denied Plaintiff's request for benefits. R. at 7-19. The Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision subject to judicial review. R. at 1-6.

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claim for DIB using the sequential process set forth in 20 C.F.R. § 404.1520, § 416.920. At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since his alleged onset date. At step two, the ALJ determined that Claimant suffered from the following severe impairments: obesity, degenerative disc disease, degenerative joint disease and a history of an Achilles tendon tear. At step three, the ALJ found that his impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that, given his Residual Functional Capacity ("RFC") Plaintiff was not capable of performing his past relevant work. At step five, the ALJ concluded that Claimant was capable of performing jobs that existed in significant numbers in the national economy. Accordingly, he concluded that Claimant was not disabled. R. at 7-19.

## III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*

*v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

## IV. Discussion

Plaintiff argues that the ALJ erred (1) at step two of the sequential evaluation and (2) in evaluating the opinion of his treating physician.

### A. Step Two

Plaintiff argues that the ALJ erred by failing to classify his mental impairments as severe at step two of the sequential evaluation. Here, the ALJ found only that obesity, degenerative disc disease, degenerative joint disease and a history of an Achilles tendon tear rose to the level of severe impairments. R. at 12. With respect to Plaintiff's mental impairments, the ALJ thoroughly considered that evidence and ultimately concluded that Claimant's alleged depression and anxiety are non-severe impairments. He noted Claimant's own statement that his conditions improved with medication, that there was no evidence in the record of a mental health hospitalization or symptom exacerbation resulting in loss of adaptive functioning, and that there was no evidence of consistent treatment with a mental health

professional beyond an initial evaluation at Allegany County Health Department in 2008. R. at 13 *citing* R. at 306-21. In addition, the ALJ cited Claimant's ability to take care of his personal needs, prepare meals, fold clothes, drive, shop for groceries, attend church, play videogames, watch television and socialize. R. at 13, 133-140, 167-68. The ALJ also concluded that Claimant's restrictions were only mild in activities of daily living, social functioning, concentration, persistence or pace and that he had no episodes of decompensation. R. at 13.

Plaintiff points to specific findings in the Allegheny County evaluation including Plaintiff's symptoms of sadness, anxiety, anxiety episodes, hopelessness, and sleep disorder. R. at 307. He also points to the diagnosis of adjustment disorder with depression and anxiety and that Claimant was noted to have a marked impairment in marriage/family, work/school, financial situation, physical health and a moderate impairment in daily activities. R. at 307, 317. Finally, he points to a GAF score of 50 which he asserts the ALJ erroneously characterized as reflecting "moderate" symptoms as opposed to "serious" symptoms. R. at 13. While Plaintiff is correct that the ALJ mischaracterized his GAF as moderate instead of serious, the Court does not find this error to be significant. In fact, a GAF of just one point higher is indicative of moderate, not serious symptoms. *See* Am. Psychiatric Ass'n, Diagnosis and Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).) (A GAF score of 41–50 indicates serious symptoms; a score of 51–60 indicates moderate symptoms; and a score in the range of 61–70 indicates mild symptoms). Moreover, despite the evidence Plaintiff cites in the record, as noted above, the ALJ found significant that the only "treatment" record was the evaluation from Allegheny County. R. at 307-21. As the Commissioner points out (and

4

Plaintiff does not argue otherwise) there are no follow up mental treatment records. *See also* R. at 350 (opinion of Dr. Woods indicating Claimant "retains the capacity to perform work-related tasks from a mental health perspective). SSR 96-8p states: "The work-related functional mental activities generally required by competitive remunerative work includes the ability to: understand, carry out, and remember instructions, use judgment in work-related decisions, respond appropriately to supervision, co-workers and work situations; and deal with changes in routine work setting." To the extent limitations were noted in certain of these areas, *see, e.g.* R. at 348-49, the ALJ found that the evidence in the record discussed above did not support these limitations. R. at 17. Despite the *de minimis* standard at step two of the sequential evaluation, the Court finds that substantial evidence supports the ALJ's decision that Claimant's mental impairments did not "significantly limit" his ability to do basic work activities.

Plaintiff also argues that the ALJ failed to properly consider his non-exertional limitations of pain, medication side effects and depression/anxiety, and proper consideration would have required him to elicit testimony from a vocational expert rather than relying exclusively on the Grids. The Court disagrees and finds that the ALJ's discussion of these non-exertional limitations does not reveal any error. As mentioned above, the ALJ supported his finding that Claimant's mental impairments were not severe and his conclusion that they did not require further evaluation is clearly indicative that they did not qualify as non-exertional limitations. R. at 13.

With respect to Claimant's allegations of pain, the Court also finds the ALJ's discussion supported by substantial evidence. The ALJ found that although Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of those symptoms were not credible. R. at 15. Among the evidence cited in support of this decision include Claimant's conservative treatment after his Achilles tear, improvement after physical therapy, conservative treatment for a disc bulge, walk with normal gait, and activities of daily living. R. at 16-17. The Court is mindful of the complaints of pain in the record but it is not the function of this Court to reweigh the ALJ's findings, and the Court finds that those findings are supported by substantial evidence in the record.

B.  Treating Physician

The standard for reviewing and weighing medical opinions is set forth in 20 C.F.R. § 416.927(d), which states in pertinent part:

> [W]e give more weight to opinions from your treating sources, since these sources are ... most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone ... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight ... We will always give good reasons ... for the weight we give your treating source's opinion.

20 C.F.R. § 416.927(d)(2). Therefore, opinions of treating physicians which are supported by medically acceptable techniques and are not inconsistent with other substantial evidence in the

6

record are to be given great weight.  Conversely, SSR 96–2p provides that a medical opinion can *only* be given controlling weight if it is (1) an actual opinion; (2) from a treating source; (3) well supported by objective evidence; and (4) not inconsistent with other substantial evidence in the case.  20 C.F.R. § 404.1527(d)(2) outlines the factors that an ALJ must consider when determining whether to afford a treating source's opinion controlling weight. The factors are as follows: (1) the "[l]ength of the treatment relationship and the frequency of examination[;]" (2) the "[n]ature and extent of the treatment relationship[;]" (3) the extent to which the opinion is supported by medical evidence of record; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the treating physician (because the ALJ generally gives more weight to specialists); and (6) "any [other] factors ... which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d)(2).

Here, Plaintiff argues that the ALJ erred in disregarding Dr. Loveria's opinion of disability.  It is well-established that the ultimate issue of disability is reserved for the Commissioner.  *See* R. at 17, SSR 96-5p.  The ALJ noted that Dr. Loveria expressed varying opinions with regards to the level of work Claimant was capable of performing.  In October, 2006, he opined Claimant was capable of performing a severely reduced range of sedentary work.  R. at 206.  He subsequently concluded in March, 2007 that Claimant was  capable of sedentary work/clerical work only.  R. at 235.  In March, 2008, he concluded Claimant could perform a reduced range of light work.  However, he noted moderate to marked restrictions in functional capabilities and opined he was in a period of continual decompensation.  R. at 269-72. Contrary to Plaintiff's argument, the ALJ did explain his reasons for rejecting certain of

Dr. Loveria's opinions including that the ultimate decision of employability is reserved to the Commissioner as stated above. He also found that the opinions were inconsistent and contradictory and not consistent with the longitudinal evidence of record. While the ALJ could have been more specific in his findings, the Court finds that his overall discussion in his opinion supports his findings. For example, as noted by the ALJ, Dr. Russell concluded that Dr. Loveria's physical examination findings were unreliable in terms of bilateral root tension. R. at 227-28. Dr. Russell noted that Claimant walked with a normal gait and did not require assistance to get on and off the examination table. Dr. Russell also noted inconsistencies in Claimant's statements and a lack of objective medical evidence in the record. R. at 16. The ALJ also cited other medical opinions including Dr. Garber's opinion that Claimant's right ankle injury had completely resolved although he developed lower back problems secondary to his ankle injury. R. at 16. In short, the ALJ did not err in his consideration of Dr. Loveria's opinion.

## V. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. A separate order shall issue.

Date: May 20, 2013                    _____/s/_____
                                       THOMAS M. DIGIROLAMO
                                       United States Magistrate Judge